[Cite as *Rowley v. Rising Stars Boxing Gym*, 2026-Ohio-2505.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jared Rowley, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 26AP-63 |
| v. | : | (M.C. No. 2025 CVI 28357) |
| Rising Stars Boxing Gym et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on June 30, 2026

**On brief:** *Jared Rowley*, pro se. **Argued:** *Jared Rowley.*

**On brief:** *Luther L. Liggett, Jr.*, for appellees. **Argued:** *Luther L. Liggett, Jr.*

APPEAL from the Franklin County Municipal Court

EDELSTEIN, J.

{¶ 1} Plaintiff-appellant, Jared Rowley, appeals from the January 8, 2026 judgment of the Franklin County Municipal Court granting summary judgment in favor of defendants-appellees, Rising Stars Boxing Promotion, LLC d.b.a. Rising Stars Boxing Gym and Ryan C. Dickey, the gym entity's sole member and owner, on Mr. Rowley's claim for violations of the Prepaid Entertainment Contracts Act ("PECA"). For the following reasons, we reverse and remand the matter to the trial court.

## I.   FACTS AND PROCEDURAL OVERVIEW

{¶ 2} On June 10, 2025, Mr. Rowley filed a complaint against appellees, alleging various violations of Ohio's PECA, a type of Consumer Sales Practices Act ("CSPA") claim under R.C. 1345.41 through 1345.50. Specifically, Mr. Rowley alleged that on November 11, 2024, he "purchased a one-month membership for $180 at Rising Stars Boxing Gym during

a temporary stay in Columbus, Ohio, which ended in November 2024." (June 10, 2025 Compl. at 1.) Mr. Rowley asserted he "informed gym staff at the time of purchase, and in subsequent correspondence, that [he] would only be using the facility for the duration of [his] visit and would be returning to Boston, Massachusetts after November 24, 2024." (Compl. at 1.) Mr. Rowley alleged that "[d]espite [his] clear communication regarding [his] departure and intent not to continue the membership, the gym charged [his] account an additional $720 for four months of membership fees after [his] relocation, without [his] authorization and ***without providing a written contract or the legally required cancellation and refund disclosures under Ohio law***." (Emphasis added.) (Compl. at 2.) On April 11, 2025, Mr. Rowley received an email from the gym indicating his scheduled April 11, 2025 subscription payment failed to process. (Compl., Attachment 2.) On April 14, 2025, Mr. Rowley emailed Mr. Dickey to request a refund and cancellation of his gym membership. (Compl., Attachment 2.) According to the complaint, Mr. Dickey sent him an email on April 14, 2025 agreeing to refund the $720 in unauthorized charges. However, "[d]espite repeated follow-up requests, the refund has not been processed to [Mr. Rowley's] account." (Compl. at 2.)

{¶ 3} In Count One of his complaint, Mr. Rowley asserted appellees were subject to PECA and alleged several violations thereof, which were as follows:

- Failure to provide a written contract with required cancellation rights (§ 1345.44)

- Failure to provide notice of my three-day right to cancel

- Failure to process a refund upon my relocation more than 25 miles from the facility (§ 1345.42(B)(7))

- Failure to adequately disclose automatic renewal terms[.]

(Compl. at 2.) Mr. Rowley attached to his complaint email correspondence between himself and Mr. Dickey concerning Mr. Rowley's cancellation and requested refund, as well as the gym's policy on billing and cancellation. Mr. Rowley's prayer for relief sought $720 in damages and "any other relief deemed appropriate." (Compl. at 2.)

{¶ 4} In their answer to the complaint, appellees asserted that "Mr. Rowley purchased a monthly membership online, that Mr. Rowley could cancel online by giving

30-days' notice, but that Mr. Rowley admits not cancelling as required by his membership terms" and denied all other allegations contained in the complaint. (July 8, 2025 Answer at ¶ 1.) On October 22, 2025, appellees jointly moved for summary judgment against Mr. Rowley pursuant to Civ.R. 56.[1]

{¶ 5} Appellees supported their motion for summary judgment with the affidavit of Mr. Dickey. Mr. Dickey averred he is "the sole member and owner of Rising Stars Boxing Promotions, LLC doing business as 'Rising Stars Boxing Gym.' " (Oct. 22, 2025 Mot., Ryan C. Dickey Aff. at ¶ 3.) He further averred that "[g]ym membership is only available by monthly subscription" and "Jared Rowley signed up for such monthly membership" on November 11, 2024. (Oct. 22, 2025 Mot., Ryan C. Dickey Aff. at ¶ 4.) Mr. Dickey's affidavit asserted that Mr. Rowley "never canceled his membership" and paid the gym's monthly subscription cost of $180 through his credit card on the 11th of each month until April 11, 2025, when his credit card was declined. (Oct. 22, 2025 Mot., Ryan C. Dickey Aff. at ¶ 4-5.) Mr. Dickey averred that "[a]fter the membership ended, Mr. Rowley sent an email on April 14, 2025, requesting a refund," a true and accurate copy of which was attached to his affidavit as Exhibit C. (Oct. 22, 2025 Mot., Ryan C. Dickey Aff. at ¶ 6.)

{¶ 6} Regarding the services rendered in exchange for payment, Mr. Dickey averred that "[a]ll gym services were available to Mr. Rowley immediately upon his first payment for monthly membership, and thereafter based on his continued payment." (Oct. 22, 2025 Mot., Ryan C. Dickey Aff. at ¶ 7.) The affidavit further provided that "Mr. Rowley never pre-paid for gym membership in advance of the current month, or for access to the gym other-than its immediate and continued availability." (Oct. 22, 2025 Mot., Ryan C. Dickey Aff. at ¶ 8.)

{¶ 7} In his memorandum opposing appellees' motion for summary judgment, Mr. Rowley restated the same allegations contained in his complaint. Mr. Rowley maintained appellees charged his bank account "an additional $720 across four months without

---

[1] In that same motion, Mr. Dickey argued that because Mr. Rowley's claims were alleged against him in his capacity as an agent of the limited liability company, he should be personally dismissed from the case. (Oct. 22, 2025 Mot. at 1-2.) Because the trial court granted appellees' motion for summary judgment, it did not address this argument. As such, this issue is not before us on appeal.

authorization." (Jan. 5, 2026 Memo in Opp. at 1.)[2]  Appellees argued this factual allegation by Mr. Rowley was tantamount to admitting "he did not pay upfront." (Dec. 23, 2025 Reply at 1.)  Mr. Rowley also again claimed Mr. Dickey "agreed via email on April 14, 2025" that he would "refund the $720, but failed to process it despite follow-ups." (Jan. 5, 2026 Memo in Opp. at 1-2.)  However, the email correspondence he attached as evidence of Mr. Dickey's agreement does not support his claim.  (*See* Compl., Attachment 2.)

{¶ 8}  On January 6, 2026, a presiding magistrate of the trial court issued a decision granting appellees' motion for summary judgment.[3]  Specifically, the magistrate found no genuine issue of material fact remained on the nature of the gym membership in which Mr. Rowley enrolled.   The magistrate observed that Mr. Dickey's affidavit "state[d] unequivocally that [Mr. Rowley] did not prepay for services, but rather agreed to pay a monthly fee for a month-by-month membership to the boxing gym, beginning November 11, 2024." (Jan. 6, 2026 Mag.'s Decision at 2-3.)  Nonetheless, the magistrate recognized Mr. Rowley had a right to cancel the agreement in writing by November 14, 2024 under R.C. 1345.43 of the PECA, but found it was clear Mr. Rowley never did this, nor that he had any intention of cancelling his membership agreement at that time.  The magistrate then concluded that none of the general provisions of PECA were applicable and, as such, the statute did not support a full refund of charges incurred after November 2024.  Mr. Rowley filed various objections to the magistrate's decision, none of which were well-taken by the trial court. Thus, on January 8, 2026, the trial court entered judgment for the appellees on the complaint and dismissed the case with prejudice at Mr. Rowley's costs.

{¶ 9}  Mr. Rowley now appeals from that judgment and asserts the following four assignments of error for our review:

> [I.] THE TRIAL COURT ERRED IN MISAPPLYING OHIO'S
> PREPAID ENTERTAINMENT CONTRACTS ACT AND IN

---

[2] The pleadings in the record suggest Mr. Rowley filed a memorandum opposing appellees' motion for summary judgment on December 22, 2025. (*See* Dec. 23, 2025 Reply at 1.) However, that pleading is not docketed on the record before us. Nonetheless, it appears Mr. Rowley filed identical responses to appellees' summary judgment motion on three separate occasions. (Jan. 8, 2026 Resp. to Obj.'s at 2.) Thus, in the absence of any indication otherwise, we presume this to be true.

[3] Pursuant to Franklin County Municipal Court Local Rule 11.07 and Civ.R. 53, all small claims cases are assigned to a particular magistrate who is responsible for hearing all issues raised prior to and during trial.

ACCEPTING [APPELLEES'] POSITION THAT THE ACT DID NOT REQUIRE RELIEF ON THE FACTS PRESENTED.

[II.] THE TRIAL COURT ERRED BY FAILING TO CONSIDER [MR. ROWLEY'S] TIMELY FILED MEMORANDUM IN OPPOSITION AND RELATED MOTION FOR LEAVE BEFORE ENTERING JUDGMENT, WHERE THOSE FILINGS RAISED MATERIAL FACTUAL DISPUTES AND LEGAL OBJECTIONS THAT REMAINED UNRESOLVED IN THE RECORD.

[III.] THE TRIAL COURT ERRED BY DENYING, MOOTING, OR FAILING TO RULE ON [MR. ROWLEY'S] MOTIONS FOR REMOTE APPEARANCE DESPITE NOTICE PROBLEMS, INDIGENCY-RELATED BARRIERS, AND [MR. ROWLEY'S] REPEATED ATTEMPTS TO PARTICIPATE IN THE PROCEEDINGS.

[IV.] THE TRIAL COURT ERRED BY RESOLVING DISPUTED FACTS AND ENTERING JUDGMENT ON A RECORD THAT CONTAINED UNRESOLVED ISSUES CONCERNING NOTICE, SERVICE, REFUND ENTITLEMENT, AND THE PARTIES' COMPETING FACTUAL ACCOUNTS.

{¶ 10} As an initial matter, we note that Mr. Rowley's brief fails to comply with App.R. 16(A)(7). Under App.R. 12(A)(2), we are permitted to "disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." *See also* App.R. 12(A)(1)(b) (requiring appellate courts to "[d]etermine the appeal on its merits on the assignments of error set forth in the briefs under App.R. 16").

{¶ 11} App.R. 16(A)(7) mandates that an appellant's brief include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Mr. Rowley's brief is substantively deficient because he has not provided any legal authority that would support reversal of the trial court's January 8, 2026 judgment.

{¶ 12} Based on Mr. Rowley's noncompliance with App.R. 16(A)(7), we could disregard and summarily overrule his four assignments of error. *See* App.R. 12(A)(2). *See also Angus v. Angus*, 2015-Ohio-2538, ¶ 10 (10th Dist.), citing *CitiMortgage, Inc. v. Asamoah*, 2012-Ohio-4422, ¶ 5 (10th Dist.); *Tonti v. Tonti*, 2007-Ohio-2658, ¶ 2 (10th Dist.). "Many times, however, appellate courts instead review the appealed judgment using the appellants' arguments in the interest of serving justice." *Angus* at ¶ 10. That said, if we "cannot understand an appellant's arguments, [we] cannot grant relief." *Id.*, citing *State v. Dunlap*, 2005-Ohio-6754, ¶ 10 (10th Dist.). And, while we "will construe pro se filings generously, appellate courts cannot construct legal arguments for an appellant." *Id.*, citing *Williams v. Barrick*, 2008-Ohio-4592, ¶ 24 (10th Dist.) and *Miller v. Johnson & Angelo*, 2002-Ohio-3681, ¶ 2 (10th Dist.).

{¶ 13} Notwithstanding the deficiencies in Mr. Rowley's brief, in the interest of justice, we will review the propriety of the trial court's decision to grant appellees' motion for summary judgment.

## II. ANALYSIS

{¶ 14} At issue here is whether the trial court erred in granting appellees' motion for summary judgment on Mr. Rowley's PECA claims pursuant to Civ.R. 56. For the reasons that follow, we find it did.

### A. Summary Judgment Standard and Standard of Review

{¶ 15} Under Civ.R. 56(C), summary judgment is proper when the moving party establishes: (1) an absence of genuine issues of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, reasonable minds could only find in favor of the moving party. *See, e.g.*, *State ex rel. Duncan v. Mentor City Council*, 2005-Ohio-2163, ¶ 9; *Oliver v. Fox's Food, LLC*, 2023-Ohio-1551, ¶ 9 (10th Dist.).

{¶ 16} Civ.R. 56(C) limits the types of materials a court may consider in ruling on a motion for summary judgment. Specifically, it provides that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." *Id.* Supporting and opposing affidavits submitted under Civ.R. 56(C) "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Civ.R. 56(E). Additionally, " '[o]nly facts which would be admissible in evidence can be * * * relied upon by the trial court when ruling upon a motion for summary judgment.' " *Guernsey Bank v. Milano Sports Ents., LLC*, 2008-Ohio-2420, ¶ 59 (10th Dist.), quoting *Tokles & Son, Inc. v. Midwestern Indem. Co.*, 65 Ohio St.3d 621, 631, fn. 4 (1992).

{¶ 17} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying the portions of the record that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating the nonmoving party has no evidence to support the nonmoving party's claims. *Oliver* at ¶ 9, citing *Dresher* at 293, and *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997).

{¶ 18} If the moving party has satisfied its initial burden under Civ.R. 56(C), then the nonmoving party " 'has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.' " *Heimberger v. Zeal Hotel Group Ltd.*, 2015-Ohio-3845, ¶ 14 (10th Dist.), quoting *Dresher* at 293. The nonmoving party may not rest on the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material that shows the existence of a genuine dispute over a material fact. *A.M. v. Miami Univ.*, 2017-Ohio-8586, ¶ 30 (10th Dist.), citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist. 1991). In the summary judgment context, a "material" fact is one that might affect the outcome of the case under the applicable substantive law. *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993). A genuine dispute exists if the evidence presents a sufficient disagreement between the parties' positions. *Id.*

{¶ 19} It is well-established, however, that "on a summary-judgment motion, any inferences regarding the evidence, including the resolution of ambiguities or inconsistencies, must be made in a manner that favors the nonmoving party." *Smathers v. Glass*, 2022-Ohio-4595, ¶ 32, citing Civ.R. 56(C) and *Wills v. Frank Hoover Supply*, 26 Ohio St.3d 186, 188 (1986) ("In reviewing a motion for summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the opposing party."). Because appellees "sought to resolve this case on summary judgment, the evidence in this case could not be weighed." *Id.* Indeed, "we are required not only to construe evidence in a light most favorable to nonmoving parties but to also resolve inferences which may reasonably be drawn from the evidence in favor of nonmoving parties." *Thompson v. Ohio State Univ. Physicians, Inc.*, 2011-Ohio-2270, ¶ 16 (10th Dist.), citing *McCarthy v. Robinson*, 1994 Ohio App. LEXIS 5348 (10th Dist. Dec. 1, 1994). Thus, " '[w]here competing inferences may be drawn or where the facts presented are uncertain or indefinite, summary judgment is not appropriate and such matters must be left to the trier-of-fact.' " *Id.*, quoting *Sprouse v. Allstate Ins. Co.*, 1989 Ohio App. LEXIS 3990, *4-5 (10th Dist. Oct. 17, 1989), citing *Duke v. Sanymetal Prods. Co.*, 31 Ohio App.2d 78 (8th Dist. 1972). *See also Smathers* at ¶ 32 ("When factual ambiguities exist, inferences must still be resolved in favor of the nonmoving party."). However, a nonmovant cannot meet his reciprocal burden of demonstrating a genuine issue of material fact remains for trial by relying upon mere speculation or conjecture. *See, e.g.*, *Sharp v. Andersons, Inc.*, 2006-Ohio-4075, ¶ 18-22 (10th Dist.).

{¶ 20} We review decisions granting summary judgment de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 2015-Ohio-2661, ¶ 12 (10th Dist.), citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 2014-Ohio-3935, ¶ 5 (10th Dist.). Under the de novo standard of review, we apply the same legal standard as the trial court but conduct an independent review of the evidence without deference to the trial court's decision. *See, e.g.*, *Gabriel* at ¶ 12; *Nazareth Deli LLC v. John W. Dawson Ins. Inc.*, 2022-Ohio-3994, ¶ 22 (10th Dist.). "We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it." *Riverside v. State*, 2010-Ohio-5868, ¶ 17 (10th Dist.), citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist. 1995).

**B. Applicable Law**

{¶ 21} The CSPA protects Ohio consumers from an "unfair or deceptive act or practice in connection with a consumer transaction." R.C. 1345.02(A). The sale of a service to an individual for primarily personal, family, or household purposes is a type of "consumer transaction" covered by the CSPA. R.C. 1345.01(A). Under the facts and circumstances of this case, there is no dispute Rising Stars Boxing Gym constitutes a "supplier" or "seller" as defined in R.C. 1345.01(C) and Mr. Rowley was a "consumer" as defined in R.C. 1345.01(D). Failure to comply with the PECA, R.C. 1345.41, et seq., "constitutes a deceptive act or practice" in violation of the CSPA. R.C. 1345.48(A).

{¶ 22} Mr. Rowley asserts Rising Stars Boxing Gym's membership agreement constituted a prepaid entertainment contract because payment of a monthly fee was assessed in advance of the month for which services were purchased. Appellees contend otherwise.

{¶ 23} Enacted in 1976, the PECA "protect[s] consumers against being high-pressured into personal service contracts that the consumer finds, after he begins receiving the services, does not benefit him as he was led to believe they would, and costs far more than he realized when he signed the contract." S.B. No. 157, Legislative History as Reported by H. Judiciary, March 9, 1976. The PECA enumerates the standards applicable to prepaid entertainment contracts for services rendered in a variety of industries, including health spas and gymnasiums. R.C. 1345.41(A)(4). As defined in R.C. 1345.41(A), a "prepaid entertainment contract" is "a contract under which the buyer of a service pays for or becomes obligated to pay for service prior to the buyer's receipt of or enjoyment of any or all of the service."

{¶ 24} After appellees collected the first month's membership dues from Mr. Rowley on November 11, 2024, he received access to the facilities for that month. Appellees maintain that the membership agreement executed by Mr. Rowley on November 11, 2024 authorized them to collect monthly membership dues via an electronic fund transfer from Mr. Rowley's bank or credit card account on the 11th of each subsequent month, at which time Mr. Rowley would receive access to the facilities for that month. Because Rising Stars Boxing Gym, as a seller of gym membership services, required consumers like Mr. Rowley to prepay for access to its gym facility and services through a month-to-month membership

billing agreement, the CSPA and the PECA govern the business practices of Rising Stars Boxing Gym. *See, e.g.*, *Brogley v. Everybody Fitness, LLC*, 2015-Ohio-1395, ¶ 17 (2d Dist.); *Bartell v. LTF Club Operations Co.*, 2015 U.S. Dist. LEXIS 49084, *21-22 (S.D.Ohio Apr. 14, 2015) (explaining that where "the monthly fee is assessed in advance of the month for which services are purchased," "[i]t is clear . . . that the PECA explicitly applies."); *Bartell v. LTF Club Operations Co.*, 2018 U.S. Dist. LEXIS 232165, *3-6, *14-16 (S.D.Ohio Feb. 9, 2018).

### C. Application

{¶ 25} Mr. Rowley alleged several PECA violations in his complaint. Chiefly, he contended that appellees failed to provide him with a copy of the written contract, signed by the buyer and seller, at the time he signed the membership agreement, as required by R.C. 1345.42(B)(1). Critically, in this litigation, appellees have never produced a copy of the written contract executed on November 11, 2024 when Mr. Rowley purchased the month-to-month gym membership. Nor did Mr. Dickey aver in his affidavit that Mr. Rowley received a copy of the written contract at the time he signed the contract or at any point thereafter. Indeed, email correspondence shows Mr. Rowley asked Mr. Dickey to provide him with a copy of the "formal written contract containing complete terms and conditions" on April 14, 2025. (Compl., Attachment 2.) Although Mr. Dickey indicated he would "get all of this together and sent to [Mr. Rowley] as soon as possible," nothing in the record before us suggests this happened. (*See* Compl., Attachment 2.) Thus, at a minimum, a genuine issue of material fact remains as to whether appellees violated R.C. 1345.42(B)(1).

{¶ 26} Mr. Rowley also alleged in his complaint that appellees failed "to adequately disclose automatic renewal terms" and failed to inform him of his cancellation rights in writing at the time he signed the contract. (Compl. at 2.) R.C. 1345.44(A) mandates that "[e]very prepaid entertainment contract shall state the date on which the buyer actually signs" and requires the seller to "give the buyer a copy of the contract that has been signed by the seller and complies with division (B) of this section." That provision requires all prepaid entertainment contracts to include, in relevant part, an "easily detachable" notice of cancellation in "ten-point boldface type," that states verbatim the procedures for cancellation of the contract as set forth in the statute. R.C. 1345.44(B). Additionally, R.C.

1345.43 requires a seller to provide a buyer with written notice of the buyer's three-day cancellation right.

{¶ 27} Even assuming Mr. Rowley had no intention to exercise his three-day right to cancel the membership agreement when he signed it on November 11, 2024, Mr. Rowley still had a statutory right to be informed, in writing, of the process for canceling the month-to-month gym membership agreement. Nothing in the record before us suggests appellees provided Mr. Rowley with the statutorily required easily detachable "notice of cancellation" form at the time he executed the agreement or at any point prior to April 11, 2025, when the renewal payment failed to process. *See* R.C. 1345.44. At a minimum, a genuine issue of material fact remains as to whether appellees violated R.C. 1345.43 and 1345.44 by failing to adequately notify Mr. Rowley of his cancellation rights and the process through which he must notify appellees of his intention to cancel the prepaid entertainment contract.

{¶ 28} Finally, Mr. Rowley alleged in his complaint that appellees violated R.C. 1345.42(B)(7). That provision states:

> Prepaid entertainment contracts shall . . . [p]rovide that if the buyer relocates twenty-five miles or more from the facility operated by the seller or a substantially similar facility that would accept the seller's obligation under the contract and if the buyer gives the seller written notice that he intends to relocate and requests that the contract be terminated, the contract shall be proportionally divided by all of the days in which the facility was made available to the buyer as part of the contract offering, and the buyer shall be liable for payments for only that portion of the contract that can be attributed to the period prior to the buyer's actual relocation, exclusive of any period of time in which the facility was made available to the buyer free of charge as part of the contract offering, provided, that the seller may require and verify reasonable evidence of relocation, and the seller shall return to the buyer the amount paid in excess of the proportional amount.

In his complaint, Mr. Rowley alleged he moved to Boston, Massachusetts after November 24, 2024. And appellees have not refuted that Mr. Rowley has lived more than 25 miles away from the gym since November 25, 2024. Since nothing in the record before us established that a copy of the written contract was provided to Mr. Rowley when it was executed on November 11, 2024 or at any point prior to April 11, 2025, there remains a

genuine question of material fact as to whether Mr. Rowley was properly informed, in writing, of the process through which he could obtain a relocation-based refund.

{¶ 29} Based on the foregoing, we find appellees failed to meet their burden on summary judgment to show there are no genuine issues of material fact and they are entitled to judgment as a matter of law. Viewing all facts in the light most favorable to Mr. Rowley, as we must at the summary judgment stage, we therefore find genuine issues of material fact remain as to whether appellees violated the PECA. Accordingly, we conclude the trial court erred in granting appellees' motion for summary judgment and sustain Mr. Rowley's first assignment of error.

{¶ 30} Having found the trial court erred in concluding appellees were entitled to summary judgment on Mr. Rowley's PECA claims, we need not consider Mr. Rowley's remaining assignments of error. Our disposition of his first assignment of error renders moot the arguments he presents in support of his second, third, and fourth assignments of error. As such, we decline to address them. *See, e.g.*, *Buck-Reed v. Sanford Plumbing, LLC*, 2025-Ohio-5195, ¶ 35 (10th Dist.), citing App.R. 12(A)(1)(c).

## III. CONCLUSION

{¶ 31} Having sustained Mr. Rowley's first assignment of error, thus rendering moot his second, third, and fourth assignments of error, we reverse the judgment of the Franklin County Municipal Court and remand this matter to that court for further proceedings consistent with this decision, including whether Mr. Dickey should be dismissed from the case in his personal capacity.

*Judgment reversed*; *cause remanded*.

LELAND and DINGUS, JJ., concur.